**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.: 18-CV-20829-KMW

KATHLEEN KENNEDY, individually,
as PERSONAL REPRESENTATIVE
of THE ESTATE OF JOHN ANTHONY,
VALANTIEJUS-RIGGLE deceased,
for and on behalf of THE ESTATE,
and the Survivors thereof

     Plaintiff,

v.

CARNIVAL CORPORATION d/b/a
Carnival Cruise Lines, and OPERADORA
ISLA DE LA PASION SA DE CV

     Defendants.
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CARNIVAL CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff, Kathleen Kennedy, individually, as Personal Representative of The Estate of John Anthony Valantiejus-Riggle, deceased, for and on behalf of The Estate and the Survivors thereof ("Plaintiff"), through undersigned counsel, hereby files this Response in Opposition to Defendant Carnival Corporation's ("Defendant") Motion to Dismiss Plaintiff's Complaint [Doc. #10]. Plaintiff respectfully states that the Court should deny Defendant's motion. In support thereof, Plaintiff would show as follows:

**I.**
**FACTUAL BACKGROUND**

This lawsuit became necessary as a result of the events which occurred during a cruise aboard the *Carnival Freedom* that began on July 1, 2017. On that date, John Anthony Valantiejus-Riggle ("Decedent") and his wife boarded the *Carnival Freedom* for a cruise from Galveston, Texas to Montego Bay, Jamaica, George Town, Cayman Islands, Cozumel, Mexico, and back to Galveston. (Doc. #1, at ¶ 18). Defendant markets its cruises as family-friendly and, as such, offers

extensive recreational excursions to the public as part of the cruise vacation experience. *Id.* at ¶ 23. Defendant profits directly from the sale of shore excursions, taking and keeping a percentage of the shore excursion revenue. The revenue from these excursions forms a significant portion of the overall revenue generated by Carnival, and is an integral portion of its business plan and model. *Id.* at ¶ 24.

On or about July 6, 2017, Decedent and his wife disembarked from the *Carnival Freedom* in Cozumel, Mexico to participate in the Isla Pasion excursion. *Id.* at ¶ 20.  While Decedent was participating in the shore excursion, Decedent utilized the inflatables at the beach as advertised by Defendant. *Id.* at ¶ 21. As a result, Decedent suffered severe injuries, including, upon information and belief, blunt force trauma to the head and neck, as well as asphyxia by immersion, which led to his death on the Isla Pasion beach. *Id.*

Plaintiff initiated this lawsuit against Carnival and the Excursion Defendant, Operadora Isla de la Pasion ("Operadora"). Specifically, Plaintiff has alleged four causes of action against Carnival: Negligence (Count 1); Negligence by Apparent Agency or Agency by Estoppel (Count 3); Negligence against both defendants based on joint venture between Carnival and Operadora (Count 4); and Negligent Selection/Retention of Tour Operator (Count 5).  Each Count contained in Plaintiff's Complaint states claims against Defendant upon which relief may be granted. As such, Defendant's motion to dismiss Plaintiff's Complaint should be denied in its entirety.

## II.
### LEGAL STANDARD

In order to satisfy the Federal Rules of Civil Procedure's pleading requirements, the Plaintiff's complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (*citing Conley v. Gibson*, 344 U.S. 41, 47 (1957) [internal quotations omitted]; *see also* FED. R. CIV. P. 8(a)(2). Further, "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." *See* FED. R. CIV. P. 10(c).  In relevant part, FED. R. CIV. P. 8 provides:

> **(a) Claim for Relief.** A pleading that states a claim for relief must contain:
> **(1)** A short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) A short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) A demand for the relief sought, which may include relief in the alternative or different types of relief.

"The Federal Rules of Civil Procedure establish a system of notice pleading rather than of fact pleading…to get away from the highly technical distinction between statements of fact and conclusions of law." *Bell Atlantic Corp.*, 550 U.S. at 590.   Therefore, "[s]o long as the defendant is provided fair notice of what the plaintiff's claim is and the grounds upon which it rests, the complaint should not be dismissed for failure to state a claim." *In re TOUSA, Inc.*, 442 B.R. 852, 856 (Bankr. S.D. Fla. 2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Atlantic Corp. v. Twombly*, 449 U.S. 544 (2007)). A claim is facially plausible when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In *Twombly,* the Supreme Court further held that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When reviewing a motion to dismiss, the Eleventh Circuit has stated, "we accept the well-plead allegations in the complaint and construe them in the light most favorable to the Plaintiff." *Franza v. Royal Carribean Cruises, Ltd.*, 772 F.3d 1225, 1227 (11th Cir. 2014) (citing *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012)).  Furthermore, in considering a Rule 12(b)(6) Motion to Dismiss, the Court must accept the facts alleged in the complaint as true, draw all reasonable inferences in the plaintiff's favor, and limit its review to the four corners of the complaint. *See e.g. Kothmann v. Rosario*, 558 F. App'x 907, 910 (11th Cir. 2014); *Allaben v. Howanitz*, F. App'x 716, 717-18 (11th Cir. 2014).

Determining whether a complaint states a plausible claim for relief is a context specific task that requires the reviewing Court to draw on judicial experience and common sense. *Iqbal*, 556 U.S. at 679. "A well-pled complaint survives a motion to dismiss even if it strikes a savvy judge that actual proof of these facts is improbable, and that a recovery is very remote and unlikely." *Hermona v. Aroma Rest., LLC*, 11-23026-CIV, 2012 WL 273086, at *1 (S.D. Fla. Jan. 30, 2012) (internal quotations and citations omitted). So long as the facts alleged in the complaint are plausible and raise a reasonable expectation that discovery can supply additional proof of the

defendant's liability, the pleading standard is met. *Chaparro v. Carnival Corp.*, 693 F. 3d 1333, 1337 (11th Cir. 2012).   "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is . . . **exceedingly low**." *Banco Popular N. Am. v. M/V Triple Play*, 12-20188-CIV, 2012 WL 12885237, at *1 (S.D. Fla. Apr. 11, 2012) (emphasis added) (internal quotations and citations omitted).

### III.
#### ARGUMENT

**I.     The Death on the High Seas Act ("DOHSA") does not govern Plaintiff's claims.**

Defendant argues that the Death on the High Seas Act ("DOHSA") is Plaintiff's exclusive remedy and that as a result, she is precluded from non-pecuniary damages. This argument fails for three reasons. First, according to Plaintiff's well-pled Complaint, she has filed this action pursuant to the general maritime law and wrongful death action acknowledged by the High Courts in *Norfolk Shipbuilding and Dry Dock Corp. v. Garris*, 532 U.S. 811 (2001), not DOHSA. *See also Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970). Second, Decedent's death was not caused on the "high seas" such that DOHSA would be Plaintiff's exclusive remedy. And third, nothing in Plaintiff's Complaint indicates that Decedent's injuries and death were caused by maritime activity such that DOHSA should apply.

Furthermore, Defendant's arguments that DOHSA governs Plaintiff's claims is not appropriate for a Rule 12(b)(6) motion to dismiss.  At the very least, this argument is entirely premature, as the decision to apply DOHSA will necessarily require the evaluation of facts that have not yet been produced in discovery.  A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) **only when it is** clear that a Plaintiff can prove no set of facts in support of the claim, which would entitle him to relief. FED. R. CIV. P. 12(b)(6); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Therefore, Plaintiff respectfully requests this Court refrain from any rulings on the application of DOHSA at this juncture, as it is not an appropriate finding relevant to Defendant's Motion to Dismiss.

**a.   Plaintiff's well-pled Complaint does not implicate DOHSA.**

"On a motion to dismiss, all well plead allegations of the complaint must be taken as true." *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F.Supp. 1538, 1542 (S.D. Fla. 1988). Accordingly, the facts as presented are "accepted as true and the likelihood of recovery is irrelevant." *In re Asbestos Litig.*, 679 F.Supp. 1096, 1098 (S.D. Fla. 1987). When deciding the

motion, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Id.* And perhaps most important, "a court may only examine the four corners of the complaint and not matters outside the complaint without converting the motion to dismiss to a motion for summary judgment." *Caravello v. Am. Airlines, Inc.*, 315 F.Supp.2d 1346, 1348 (S.D. Fla. 2004).

In her Complaint, Plaintiff asserts that this Court "has jurisdiction over this matter because the causes of action asserted herein arise under 28 U.S.C. § 1333 and the general maritime law of the United States." (Doc. #1, at ¶ 4). Plaintiff has not filed this action pursuant to DOHSA and does not allege facts that would support Defendant's argument that DOHSA is Plaintiff's exclusive remedy. Specifically, Plaintiff has made no allegation that this incident, or the resulting injuries, occurred on the "high seas". *See id.* Taking all facts and reasonable inferences as true, and viewing the complaint in the light most favorable to Plaintiff, DOHSA does not apply to this case and, therefore, is not Plaintiff's exclusive remedy.

### b. Decedent's death did not occur on the "high seas" as required by DOHSA.

Defendant makes two primary arguments in support of its claim that DOHSA applies to this matter and therefore should be Plaintiff's exclusive remedy. Both are similar, but neither is considerable as Defendant misapplies the standards set forth in relevant case law. First, Defendant argues that DOHSA applies here because Decedent's death occurred "while the subject vessel was in Cozumel, Mexico . . . [and] in international waters and/or the territorial waters of Mexico." (Doc. # 10, at 4). Second, Defendant argues that DOHSA applies because Decedent's death "was substantially connected to the commencement of his injury, which occurred while he was participating in water activities in Mexican water." *Id.* at 5.

"The Death on the High Seas Act provides a cause of action 'whenever the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States. . . .'" *Perez v. NCL (Bahamas) Ltd.*, 2017 WL 5185315, at *2 (S.D. Fla. Nov. 7, 2017). Location of the ship is irrelevant if the injury did not occur onboard the vessel. *Id.* (holding that "here, the cause of action accrued on land at the time that the decedent fell from the zip-line. Thus, because that injury did not occur on the high seas, DOHSA des not apply.").

In light of the above, Defendant's first argument, then, is unconvincing. Quite simply, as Plaintiff alleges, Decedent's injuries occurred during an onshore excursion to Isla Pasion, a private

island near Cozumel, Mexico. (Doc. #1, at ¶ 20). Location of the cruise ship is immaterial. To apply DOHSA, the Court must first ask "[w]here did the death inducing injury occur?" *Moyer v. Roderi*, 645 F.Supp. 620 (S.D. Fla. 1986). DOHSA cannot apply here simply because the ship was allegedly in international waters when Decedent was injured and passed away.

Furthermore, the cases Defendant cites in support of its argument that DOHSA should apply are all distinguishable from the facts at hand. In this case, Decedent's death did not occur in navigable open waters; instead, the injury occurred on a beach. The *Moyer* case Defendant cites is distinguishable as the injuries from which decedent died "began in the open seas off Cozumel, Mexico," not in the beachside shore waters as Defendant would have this Court believe. *See Moyer v. Rederi*, 645 F.Supp. 620, 622 (S.D. Fla. 1986). Similarly, Defendant cites to the *Perkins* and *Mellor* cases, both of which also involve injuries occurring on open water. *See Perkins v. Ottershaw Investments, Ltd.*, 2005 WL 3273747 (S.D. Fla. 2005)(decedent "drowned during the open water dive portion of the 'Resorts Course' in scuba diving"); *see also Mellor v. Moe*, 2007 WL 2883784 (S.D. Fla. 2007)(the Court made findings of fact that the accident occurred approximately 500-600 yards offshore, after the jetskis had departed into the open water).

The facts herein do not support the application of DOHSA, as the injuries and subsequent death of Decedent did not occur on the high seas, and is distinguishable from each case cited by Defendant. Therefore, Plaintiff requests this Court deny Defendant's motion.

    **c.  The events that caused Decedent's death are not related to maritime activities such that DOHSA should apply to this matter.**

Defendant's second argument, that DOHSA applies because Decedent's injuries occurred as the result of water activities on the island, is also misplaced and does not support a finding that DOHSA applies to this case.

In support of its argument, Defendant cites *Moyer* in hopes that it will carry the day. A closer look at *Moyer* shows that it actually supports Plaintiff's arguments that DOHSA does not apply here, rather than solidifying Defendant's position.[1] In *Moyer*, the court pointed out that DOHSA could apply to the plaintiff's wrongful death action which occurred in the territorial waters of Mexico as long as it could also find that "the cause of action bears a significant relationship to traditional maritime activity" noting that such a connection was "a requisite for

---

[1] It is important to note that the *Moyer* opinion outlines the Court's decision on the defendants' motion for partial summary judgment, not a motion to dismiss as is being argued here.

admiralty jurisdiction under *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249 (1972)." *Moyer*, 645 F.Supp. at 624-25. In doing so, the court noted that the Supreme Court in *Executive Jet Aviation* "rejected the 'locality' test as both too narrow and too broad." *Id.* at 625. In order to avoid "'perverse and casuistic borderline situations,'" and to negate the "vagueness and overbreadth of the 'locality' test," the court in *Executive Jet Aviation* laid down a rule addressing those problems. *Id.* at 626. The rule required that "a cause of action falling under admiralty jurisdiction . . . [must] have a maritime nexus, or 'a significant relationship to maritime activity.'" *Id.*

In her Complaint, Plaintiff alleges that the excursion was advertised as a "getaway to a private island for cruise guests, complete with food, beverages, and water float inflatables." (Doc. #1, at ¶ 20). Unlike in *Moyer*, where the court found the decedent's cruise-related snorkeling expedition to be integrally connected to maritime activity, here there are no facts to support, and Plaintiff does not allege, that Decedent's injuries are linked to traditional maritime activity. The activities alleged in Plaintiff's Complaint are more similarly aligned to a land-based excursion. And interestingly, even Defendant argues that in fact, the excursion during which Decedent was killed, was purchased with a "Shore Excursion" ticket. (Doc. #10 at 15). Clearly, DOHSA does not apply to Plaintiff's causes of action, and at the very least, should not be determined at the Rule 12(b)(6) stage.

In sum, Defendant has not overcome its burden to show that DOHSA applies to this matter. As noted above, on a motion to dismiss, the court examines only those factual allegations within the four corners of the complaint and all inferences and facts are accepted as true. Construing her allegations in her favor, it is clear from Plaintiff's Complaint that DOHSA does not apply to her well-pled general maritime law claims.

### d. Defendant's argument that Plaintiff is entitled to only pecuniary damages fails.

Finally, although beyond the purview of a 12(b)(6) motion to dismiss, Plaintiff briefly points out that Defendant mistakenly asserts that non-pecuniary damages are not recoverable here. Because DOHSA does not apply, Plaintiff is entitled to recover non-pecuniary damages. Federal law does not displace state wrongful death remedies and permits non-pecuniary damages when the plaintiff's claims arise from the death of a non-seaman. Plaintiff, then, is entitled to recover non-

pecuniary damages as a remedy for her causes of action. *See e.g. American Dredging Co. v. Lambert*, 81 F.3d 127, 130 (11th Cir. 1996).

## II.    Count I of Plaintiff's Complaint is Adequately Pled and Should Not Be Dismissed.

"To properly plead a negligence claim, a plaintiff must allege four elements: '(1) a legal duty on the defendant to protect the plaintiff from particular injuries; (2) the defendant's breach of that duty; (3) the plaintiff's injury being actually and proximately caused by the breach; and (4) the plaintiff suffering actual harm from the injury.'" *Pucci v. Carnival Corp.*, 146 F.Supp.3d 1281, 1286 (S.D. Fla. 2015) (internal citations omitted). Plaintiff's Count I, then, survives dismissal as long as she has set forth a plausible claim for relief under that framework—which she has. *Iqbal,* 556 U.S. at 678.

It is well established that with respect to the duty element in a maritime context "a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Chaparro*, 693 F.3d at 1336 (quoting *Kermarec*, 358 U.S. at 630). But Defendant argues that Plaintiff's negligence claims impose duties on Defendant that are above and beyond those required under the law. However, Plaintiff is not expanding Carnival's duties, and instead, Defendant is misconstruing the allegations as set forth in Count I of the Complaint.

Plaintiff begins her Count I by stating that "[a]t all times material hereto, Carnival owed the duty to Decedent to exercise reasonable care under the circumstances for Decedent's safety, and to warn of dangers known to Carnival in places where its passengers, including Decedent, were invited to and may reasonably be expected to visit." (Doc. #1, at ¶ 35). Plaintiff then outlines the various ways in which "Carnival breached its duty of care to Decedent." *Id.* at ¶ 36. For example, Plaintiff alleges that:

- Defendant failed to properly warn, supervise, or make Decedent aware of the dangerous conditions surrounding the water inflatables that were part of the excursion. *Id.* at ¶ 21.

- Defendant's failures were a proximate cause of Decedent's injuries because as a result of the improper and dangerous operation and supervision of the water activities, and the lack of proper medical equipment and personnel, Decedent suffered blunt force trauma to the head and neck, as well as asphyxia by immersion. *Id.* at ¶ 22.

- Plaintiff further alleges that Defendant:

- ▪ Failed to provide an excursion with proper and safe equipment and personnel, including medical/emergency equipment and personnel. *Id.* at ¶ 36(b);

- ▪ Failed to provide and adequately inspect, investigate, screen, select and retain the services of its tour operator partner, Operadora Isla de la Pasion, to ensure it was operating and running a reasonably safe excursion. *Id.* at ¶ 36(c);

- ▪ Failed to adequately warn Decedent of the dangers that would be encountered during the subject excursion. *Id.* at 36(e); and

- ▪ Failed or allowed the excursion to proceed and/or continue under hazardous conditions which posed an unreasonable risk of injury to Decedent. *Id.* at ¶ 36(f).

Clearly Plaintiff has outlined a claim for negligence that is plausible on its face and adequately pled according to the Federal Rules. Even if, as Defendant claims, Plaintiff has made allegations that do not fit the standard of care typical of a case that falls under general maritime law, dismissal is not warranted here, and Plaintiff is entitled to multiple theories of liability under her negligence claim. *See McLaren v. Celebrity Cruises, Inc.*, 2012 WL 1792632, at *5 (S.D. Fla. 2012) (noting that the court will not strike alleged duties "in line-item fashion"); *see also Manning v. Carnival Corp.*, 2012 WL 3962997, at *3 (S.D. Fla. 2012) (where the Court was "not persuaded by a request seeking dismissal of paragraphs of a count in a complaint for failure to state a claim" because "either the count states a claim or it does not."). The subsections on which Defendant's issues lie are not alleged as separate "duties" – they are merely included to support Plaintiff's negligence claim by pleading with sufficient factual information the specific ways in which Defendant *breached* the duty of reasonable care owed to Plaintiff. Each alleged breach is supported by plausible facts; whether it is considered "reasonable under the circumstances" for Defendant to have taken the actions discussed therein should not be determined at the pleading stage.

Further, under general maritime law, "[a] carrier's duty of reasonable care includes a duty to warn 'of dangers known to the carrier in places where the passenger is invited to, or may reasonably be expected to visit.'" *Pucci*, 146 F.Supp.3d at 1287 (internal citations omitted). Additionally, in a duty to warn case, it must be shown that a shipowner had actual or constructive notice of the condition that created the risk to the passenger. *Heller v. Carnival Corp.*, 191 F.Supp.3d 1352, 1358 (S.D. Fla. 2016) (internal citations omitted). Furthermore, even if a

defendant does not have constructive notice of a dangerous condition, "it still may be held liable for the Plaintiff's injuries for allegedly having created the unsafe or foreseeably hazardous condition." *Caldwell v. Carnival Corp.*, 944 F. Supp. 2d 1219, 1224 (S.D. Fla. 2013).

Defendant's reference to *Gayou* and *Koens* is unpersuasive as in both those cases, the plaintiffs failed to cite **any** facts regarding their negligence claims. The case herein is clearly distinguishable.  Plaintiff has alleged that Defendant knew or should have known about the dangerous conditions, yet did nothing to warn Decedent or to eradicate any of the dangers. *See Fojtasek v. NCL (Bahamas) Ltd.*, 613 F.Supp.2d 1351, 1355 (S.D. Fla. 2009). Specifically, Defendant advertised the getaway to its passengers, sold tickets for the excursion, represented that it was safe and a "moderate" activity level tour, had knowledge of the dangerous condition of the beach and the associated activities, but failed to rectify the dangerous conditions or warn Decedent of them. *Id.* at ¶¶ 20, 21.

Furthermore, the *Gayou* and *Koens* cases are not binding, and other judges in the Southern District of Florida have declined to follow their rulings. For example, in *Ash v. Royal Caribbean Cruises Ltd.*, No. 13-20619-CIV, 2014 WL 6682514, at *5-6 (S.D. Fla. Nov. 25, 2014), Magistrate Judge Goodman declined to follow *Gayou*, noting that it is not binding, and explained:

> The Undersigned's approach focuses on the "knew-or-should-have-known" allegation, along with the few facts offered to support that claim, and finds that they are plausible and sufficient to state a negligence claim. It may well be that Plaintiffs here will never obtain evidence that Royal Caribbean or Rendezvous knew or should have known of a danger concerning the transportation component of the excursion. In that event, Defendants may seek summary judgment.
>
> There is one final point to note. As a practical matter, a personal injury plaintiff is often unaware of specific facts demonstrating that the defendant knew or should have known of a dangerous condition at the time the lawsuit is filed, before taking discovery.  Plaintiffs sometimes obtain evidence of the defendant's knowledge during discovery, such as by obtaining evidence that the defendant was aware of prior injuries occurring under similar circumstances.

Judge Goodman relied on the rule in *Chaparro*, which held that *Ashcroft* only requires that "the facts alleged in the complaint are plausible and raise a reasonable expectation that discovery could supply additional proof of Carnival's liability." *See also Ash*, 2014 WL 6682514 at *4.

The *Heller v. Carnival Corp.* case is more instructive here than either *Gayou* or *Koens*. In *Heller*, a cruise ship passenger was injured while participating in a shore excursion. 191 F.Supp.3d at 1352. The plaintiff brought failure to warn claims against the cruise ship operator. *Id.* at 1358-59. The court noted that "Plaintiff's allegation Carnival should have become aware of the risk-creating condition during inspections of the Excursion Entities is sufficient regarding Carnival's actual or constructive notice of the risk-creating condition." *Id.*, at 1358. The Court held that the following facts "adequately establish[ed] a claim for negligence based on failure to warn:" (1) Carnival sold tickets for, advertised, approved, marketed and/or operated the Segway Tour; (2) Carnival represented to her the Segway Tour was safe, and the Segways were easy to operate; (3) Carnival knew or should have known, based on inspections, of the possible dangers of the Segway Tour; (4) Plaintiff embarked on the Segway Tour; and (5) Plaintiff was injured during the Segway Tour when she and another participant collided. *Id.*

Here Plaintiff's allegations even go beyond what the court in *Heller* held to be sufficient to survive the defendant's motion to dismiss. As Judge Lenard noted denying a similar motion to dismiss:

> Under *Twombly/Iqbal's* liberal pleading standard, the Plaintiff is not required to specifically detail which policies and procedures were unsafe and how they created danger. She needed only allege that there was a danger that Celebrity should have or could have known about. Because Plaintiff has satisfied her pleading requirements, her claim for negligence survives Celebrity's 12(b)(6) motion.

*Witover v. Celebrity Cruises, Inc.*, 161 F.Supp.3d 1139 (S.D. Fla. 2016).

In that regard, Plaintiff pled the following facts:

- "At all times material hereto, Carnival negligently and recklessly failed to determine the hazards that the subject excursion posed to Decedent, failed to eliminate hazards, failed to modify the hazards and/or failed to properly warn Decedent of the hazards. All of the above directly and proximately caused John Anthony Valantiejus-Riggle to be catastrophically injured and subsequently killed . . ." *Id.* at ¶ 37;

- "**Carnival knew of the foregoing conditions causing Decedent's accident** and did not correct them, or the conditions existed for a sufficient length of time so that Carnival, in the exercise of reasonable care under the circumstances, **should have learned of them and corrected them**." *Id.* at ¶ 38 (emphasis added); and

- "**Carnival knew of the foregoing conditions causing Decedent's injuries** and death and did not correct them, or the conditions existed for a sufficient length of time so that Carnival, in the exercise of reasonable care under the circumstances, **should have learned of them and corrected them**." *Id.* at ¶ 40 (emphasis added).

Because Plaintiff has provided a sufficient factual basis for all of her negligence claims, dismissal is inappropriate and Defendant's motion should be denied.

### III.   Count III of Plaintiff's Complaint is Adequately Pled and Should Not Be Dismissed.

#### a.   Count III of Plaintiff's Complaint Properly Pleads a Negligence Claim Under Alternative Agency Theories of Liability, and Should Not Be Dismissed.

Defendant argues that Count III should be dismissed because there is no independent cause of action for apparent agency or agency by estoppel. However, courts have consistently denied similar motions to dismiss on these grounds.  Specifically, in *Gayou* and *Ash*, the plaintiffs alleged a direct negligence count, followed by a separate negligence count based on apparent agency.  The defendants in both cases moved to dismiss, arguing (like Defendant argues in its Motion to Dismiss) that apparent agency is not an independent cause of action. The court in both cases, however, disagreed with the defendants and considered them proper negligence counts grounded on an agency theory of liability. *See Gayou*, 2012 WL 2049431 at *8 n.4 ("A fair reading of the substance of the claims…makes plain that [plaintiff] is really pleading negligence causes of action that are grounded on an agency theory of liability. The Court so construes them."); *see also Ash*, 2014 WL 6682514 at *7 (agreeing with *Gayou*). Similarly, in *Winter v. Royal Caribbean Cruises, Ltd.*, Case No. 14-cv-23978-KING (S.D. Fla. July 24, 2015), the court denied Royal Caribbean's Motion to Dismiss plaintiff's apparent agency count, stating "[t]he Court recognizes that "apparent agency" is not a cause of action, but finds no good cause to dismiss Plaintiffs Count III on that basis alone. This Court and the Eleventh Circuit have in practice dealt with such "apparent agency" claims on their merits rather than dismissing them for such a formalistic reason."

Furthermore, under federal maritime law, "a defendant can be vicariously liable for actions of its apparent agents." *Heller*, 191 F.Supp.3d at 1360. Apparent agency is established when:

1) the alleged principal causes, through some manifestation, a third party to believe an alleged agent has authority to act for the benefit of the principal;

      2)  such belief is reasonable; and

      3)  the third party reasonably acts on such belief to her detriment.

*Id.*

This type of relationship can be created "by silence where 'the principal knowingly permits an agent to act as if the agent is authorized,' or by 'acting in a manner which creates a reasonable appearance of an agent's authority." *Belik v. Carlson Travel Group, Inc.*, 864 F.Supp.2d 1302, 1311 (S.D. Fla. 2011). "Under Florida law, agency by estoppel, i.e. apparent agency, embraces the primary elements of a representation by the principal, reliance on the representation by the claimant, and a change of position  by the claimant in reliance on the representation.'" *Id.* at 1312 (internal citations omitted).

In her Complaint, Plaintiff has provided a sufficient factual basis to support her apparent agency or agency by estoppel claims. For example, Plaintiff has alleged, including but not limited to, the following:

- Carnival held out the owners and/or operators of Operadora Isla de la Pasion as its apparent agent. *See* (Doc. #1. at ¶ 49);

- "Carnival represented to its cruise passengers, including but not limited to Decedent, that the operator of the Isla Pasion excursion was acting for the benefit of Carnival." *Id.*;

- As soon as Decedent received his cruise ticket, Carnival made known to its passengers through the internet, brochures, and other media that "various Carnival excursions . . . were . . . an integral part of the cruise ship voyage." *Id.* at ¶ 50(a); and

- "Operadora Isla de la Pasion was not identified as the owner/operator of the Isla Pasion excursion at any time when it was being marketed by Carnival and purchased by its passengers, including Decedent." *Id.* at ¶ 50(c).

Additionally, Carnival marketed the excursion using its company logo, *id.* at ¶ 50(g); until Decedent boarded the FREEDOM his exclusive contract concerning the excursion was with Carnival, *id.* at ¶ 50(h); Carnival recommended to Decedent to take only "Carnival shore tours," *id*. at ¶ 50(i); Decedent received his ticket exclusively from Carnival, *id.* at ¶ 50(j); and Carnival promoted its "Best Price Guarantee" for bookings on "Carnival's shore excursions." *Id.* at 50(k).

In short, Decedent "reasonably relied" on Defendant's assertions to his detriment. *Id.* at ¶ 51. At no time did Defendant represent to Decedent that Operadora was not Defendant's agent. *Id.*

at ¶ 53. These facts, taken in a light most favorable to Plaintiff, are sufficient to survive Defendant's motion to dismiss.

> **b.  The Shore Excursion Ticket Is Beyond the Four Corners of the Complaint and Cannot Be Considered in a Motion to Dismiss.**

As its primary defense, Defendant cites to the shore excursion ticket Decedent received from Defendant, and alleges that the disclaimer on the back was enough to establish that Decedent could not have a "reasonable belief" that Carnival and Operadora were agents. *See* (Doc. #10, at 14). This argument fails for two reasons. First, Plaintiff has alleged a sufficient factual basis for her agency claims. And second, Plaintiff neither attaches to, nor relies on the ticket in her Complaint, and therefore, it cannot be considered at this stage of the proceedings.

It is well settled that, when considering a motion to dismiss, the scope of a court's "review must be limited to the four corners of the complaint." *St. Georges v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)(citing *Grossman v. Nationsbank, NA.*, 225 F.3d 1228, 1231 (11th Cir. 2000). In fact, pursuant to binding Eleventh Circuit precedent, the general rule is that a district court does "not consider anything beyond the face of the complaint…when analyzing a motion to dismiss." *Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). The only exception to this rule does not apply in this case.  The Eleventh Circuit "recognizes an exception…in cases in which [1] a plaintiff refers to a document in its compliant, [2] the document is central to its claim, [3] its contents are not in dispute, ***and*** [4] the defendant attaches the document to its motion to dismiss." *Id.* (emphasis added). The facts herein do not meet all four requirements, as necessary, and therefore, the exception does not apply. *See SIG, Inc. v. AT&T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1188 (S.D. Fla. 2013)(noting that "each of [the] requirements" must be met).

Each of the requirements are not met because the Shore Excursion Ticket is not central to Plaintiff's claims against Defendant.  Count III asserts a maritime personal injury tort claim, not a breach of contract action. In *Heller*, discussed above, the Court also noted that although the plaintiff's Complaint referenced the excursion ticket, it mentioned it only in passing, and not as an integral part of the plaintiff's claim. *See Heller*, 191 F.Supp.3d at 1361. Similarly in *Belik*, the court noted that "[w]hile Plaintiff refers to the ticket contract, . . . he does not *rely* on the contract for any of his claims. In order to consider outside documents provided by Carnival, the documents must be 'central to the plaintiff's claim;' otherwise upon their consideration, the Motion must be

converted to a motion for summary judgment." *Belik*, 864 F.Supp.2d at 1310; *see also Gentry v. Carnival Corp.*, 2011 WL 4737062 at *5 (S.D. Fla. Oct. 5, 2011)("[plaintiff] does not assert any breach of contract claims against [defendant]. Instead, she asserts claims based on tort theories. As such, the ticket contract is not essential or integral to [plaintiff's] claims, rather, it is part of [defendant's] defense.). As in *Heller*, *Gentry*, and *Belik*, the ticket here is not essential or integral to Plaintiff's claim; rather, it is part of Carnival's defenses and therefore immaterial in the Court's analysis on Defendant's Motion to Dismiss.

Furthermore, Defendant's reliance on *Wolf* is misplaced in that *Wolf* dealt with the ship owner's motion for summary judgment, not a motion to dismiss, and is therefore irrelevant for this analysis. *Wolf v. Celebrity Cruises, Inc.*, 683 Fed.Appx. 786 (2017). As outlined above, Plaintiff has provided allegations of Defendant's manifestations of an agency relationship with Operadora. Taking the allegations as true, Plaintiff's claims survive dismissal.

### c. The existence of an agency relationship is a question of fact.

Even if this Court considers the Shore Excursion Ticket at the motion to dismiss stage, the ticket does not call for dismissal of Count III because the reasonableness of Plaintiff's belief that the Operadora was Defendant's agent is a question of fact. "Courts in the Eleventh Circuit sitting in admiralty have held that Federal Maritime Law embraces the principles of agency and that **the existence of an agency relationship is a question of fact.**" *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1371 (S.D. Fla. 2005)(citing *Warren v. Ajax Navigation Corp.*, 1995 AMC 2609 (S.D. Fla. 1995); *see also Belik*, 864 F. Supp. at 1310-11 ("generally the question of whether an agency relationship exists is a factual question").

As discussed above, apparent agency is established upon a showing of three elements, and in its Motion, Defendant only raises an issue as to the second element, i.e., that "Plaintiff cannot state a claim for apparent agency as a matter of law because she cannot plead that the Decedent reasonably believed that Carnival and the Excursion Entity were agents." (Doc. #10 at 14). In support of its argument, Defendant cites two cases, *Hajtman v. NCL (Bahamas) Ltd.* and *Wajnstat v. Oceania Cruises, Inc.*, which are easily distinguishable because they involved allegations of inadequate and/or improper medical care by the shipboard doctors. The courts therefore held that the plaintiffs' belief was "unreasonable as a matter of law" because the since abrogated case law held at the time that cruise lines were not vicariously liable for their medical staff as a matter of law. *See Hajtman*, 526 F.Supp.2d at 1328-9; *Wajnstat*, 2011 WL 465340, at *4; *see also Gentry*,

2011 WL 4737062, at *5 (distinguishing *Hajtman* in refusing to consider the passenger ticket contract at the motion to dismiss stage for a shore excursion case.)

This is not the case with cruise lines and shore excursion operators. In fact, district courts have consistently denied cruise line's motions to dismiss claims for apparent agency by properly relying solely on plaintiffs' allegations. *See Lapidus v. NCL Am. LLC*, No. 12-21183-CIV, 2012 WL 2193055, at *5 (S.D. Fla. June 14, 2012); *Belik*, 864 F. Supp. 2d at 1311; *see also Gentry*, 2011 WL 4737062, at *6. Here, as in *Lapidus*, *Belik* and *Gentry*, a review of the facts alleged by Plaintiff in her Complaint supports the claim that Decedent reasonably believed that Operadora was Defendant's agent, as more fully outlined above.  Considering Plaintiff's allegations, which are taken as true and construed in the light most favorable to Plaintiff, the Complaint sets out a claim for apparent agency sufficient to state a plausible entitlement to relief. *See Iqbal*, 556 U.S. at 678.

Defendant's grounds for dismissal are therefore without merit and improper at this juncture of the case.

### IV. Count IV of Plaintiff's Complaint survives Defendant's motion to dismiss, and examining the Shore Excursion Agreement would require this Court to improperly review documents beyond the four corners of the Complaint.

Count IV of Plaintiff's Complaint is a negligence claim based on a theory of vicarious liability under joint venture. "To plead negligence based on a joint-venture theory, Plaintiff must allege: '(1) a community interest in the performance of a common purpose; (2) joint control or right of control; (3) a joint proprietary interest in the subject matter; (4) a right to share in the profits; and (5) a duty to share in any losses which may be sustained.'" *Heller*, 191 F.Supp.3d at 1362-63 (internal citations omitted). Plaintiff's Complaint alleges all of the necessary elements to support the theory that Defendant and Operadora engaged in a joint venture.

In her Complaint, Plaintiff has made several allegations that Carnival and Isla Pasion are negligent pursuant to a joint venture theory of liability. Plaintiff alleges that:

- "At all times material hereto, Carnival and Operadora Isla de la Pasion entered into an agreement, whether by formal contract or through their subsequent and ongoing course of conduct, whereby Carnival would sell the Isla Pasion excursion to its passengers and Operadora Isla de la Pasion would provide personnel to operate the Isla Pasion excursion." (Doc. #1, at ¶ 59);

- The excursions are a significant portion of the cruise and integral to Defendant's business plan. *Id.* at ¶ 60;

- Defendant "set up, developed, arranged for, sponsored, recommended, marketed, set the pricing, directly sold, provided expert advice, made announcements, organized passengers, handled customer complaints and issued refunds, controlled, supervised and monitored the Operadora Isla de la Pasion Isa Pasion excursion." *Id.* at ¶ 61;

- ". . . Operadora Isla de la Pasion provided the personnel and equipment for the subject excursion for Carnival's passengers and agreed to work jointly with Carnival in its performance and operation." *Id.* at ¶ 62;

- Carnival charged and collected fees and "upon information and belief, the fee was split between Carnival and Operadora Isla de la Pasion, so that each Defendant directly shared in the profits and losses of the joint venture." *Id.* at ¶ 63;

- Both had control of the day-to-day workings of the operations, and shared duties. *Id.* at ¶ 64; and

- ". . . Carnival further benefited from the joint venture by not having to expend the money and other resources necessary to create its own excursions from scratch in each port." *Id.* at ¶ 65.

As to the first element, the Complaint alleges that Defendant and Operadora shared a common purpose, namely, to directly share in the profits. *Id.* at ¶ 63. The second element is also sufficiently pled with allegation pertaining to the joint control Defendant and Operadora possessed over the excursion. *See id.* Similarly, the third element is alleged with sufficient facts supporting the conclusion that Defendant and Operadora had a joint proprietary interest in operating the shore excursion for a profit. *See id.* Finally, the fourth and fifth elements are also properly pled with facts concerning Defendant and Operadora's right to share profits, as well as the duty to share losses. *See id.* Therefore, a sufficient factual basis exists in Plaintiff's Complaint to provide notice to Defendant of her allegations, and Defendant's motion should be denied. *Id.* at ¶ 68.

Furthermore, Defendant's attempt to refer to the "Shore Excursion Independent Contractor Agreement" is misplaced, and should be ignored for purposes of Defendant's motion. As discussed above in reference to the Shore Excursion Ticket, the scope of a court's "review must be limited

17

to the four corners of the complaint." *St. George*, supra; *see also Stephens*, supra. Like the Shore Excursion Ticket, the facts here do not meet all four requirements, as necessary, to review the Contractor Agreement.   Specifically, Plaintiff: (1) never referred to the Shore Excursion Independent Contractor Agreement; (2) the Agreement is not central to Plaintiff's claims against Defendant; and (3) the contents of the document are in dispute. The agreement has not been authenticated, and Plaintiff does not know whether this is the actual agreement in effect at the time of the incident. For example, the agreement was made on September 15, 2005, and refers to the Operator as "Peninsula de la Pasion SA de C". Defendant has never identified this "Operator," and further, the date of the underlying incident in this suit is July 6, 2017.

Defendant's alleged agreement with this contractor is well beyond the scope of review applicable to Defendant's motion to dismiss, and therefore, holds no weight in support of Defendant's argument. Defendant's motion must therefore be denied.

**V.    Count V for Negligent Selection/Retention Has Been Sufficiently Alleged and Should Not Be Dismissed.**

First, and to be clear, Plaintiff does not have a separate cause of action for negligent selection and/or retention in this case. Rather, the selection and/or retention of incompetent and/or unfit excursion operators are alleged breaches that are subsumed within Plaintiff's negligence claim in Count I.

It is "well-established that [cruise lines] may be liable for negligently hiring or retaining a contractor," including shore excursion operators. *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 13818 (S.D. Fla. 2011)(citing *In re Central Gulf Lines, Inc.*, 176 F. Supp. 2d 599, 622 (E.D. La. 2001); *Guarascio v. Drake Associates Inc.*, 582 F. Supp. 2d 41, 457 (S.D.N.Y. 2008)(providing standard for claim alleging negligent selection of independent contractor in maritime action); *Jackson v. Carnival Cruise Lines, Inc.*, 203 F. Supp. 2d 1367, 1374 (S.D. Fla. 2002).

To bring a negligent selection and/or retention claim under Florida law, a plaintiff must prove that "(1) the contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff[']s injury." *Smolnikar*, 787 F. Supp. 2d at 1318. Plaintiff's Complaint more than sufficiently pleads facts to establish each and every element of a negligent selection and/or retention claim, as more thoroughly detailed above

with regards to Plaintiff's Count I. Plaintiff was injured due to the hazardous nature of the excursion, and Defendant knew or reasonably should have known that the excursion was not reasonably safe for its passengers. The Complaint then details the acts and/or omissions that amounted to a breach of Defendant's duty of care, as outlined above. These acts and/or omissions, including Operadora's incompetence and/or unfitness, caused and/or contributed to Plaintiff's incident and resulting death. (Doc. #1 at ¶73). Furthermore, Defendant knew or reasonably should have known that Operador was incompetent or unfit. *Id.*

Plaintiff's Complaint therefore pleads a prima facie case for negligent selection and retention.

### VI.    Plaintiff's claims for punitive damages survive Defendant's motion.

Defendant argues that Plaintiff's claims for punitive damages should be dismissed "because Plaintiff has not pled conduct on the part of Carnival for which punitive damages are warranted." (Doc. #10, at 18). In doing so, Defendant points to a number of cases, none of which justify striking Plaintiff's damages claims. *Id.* In the Eleventh Circuit's *In re Amtrak "Sunset Limited" Train Crash* opinion, the court held that passengers could not recover punitive damages unless the plaintiff could make a showing of intentional conduct on the part of the defendant. 121 F.3d 1421 (11th Cir. 1997). But in a subsequent opinion, *Atlantic Sounding Co. Inc. v. Townsend*, 557 U.S. 404 (2009), "the Supreme Court adopted the *opposite* assumption than that of the Eleventh Circuit in *Amtrak* and stated the general rule that punitive damages available at common law historically 'extended to claims arising under federal maritime law.' The plaintiff is no longer required to prove intentional misconduct." *Doe v. Royal Caribbean Cruises, Ltd.*, 2012 WL 920675, at *3-4 (S.D. Fla. 2012) (emphasis as in original).

Plaintiff's claims for punitive damages, then, survive Defendant's motion on this basis alone. Further, any assertion by Defendant that Plaintiff has failed to state a claim which justifies an award of punitive damages is also misplaced. As noted throughout, and discussed at length under Heading II of Section III of her response, Plaintiff has made allegations that support Plaintiff's claims for punitive damages. Plaintiff pled that Defendant's actions were a "direct and proximate result of the negligence, recklessness, and gross negligence of Defendant Carnival and its agents, servants, employees," etc. (Doc. #1, at ¶ 41. And that as a result of those actions, "Decedent was killed" and Plaintiff suffered damages. *Id.* Plaintiff's allegations are more than enough, especially on a motion to dismiss, to justify denial of Defendant's motion.

**VII.    In the alternative Plaintiff requests leave to amend her Complaint should the Court find that Plaintiff has failed to sufficiently plead any of her causes of action against Defendant.**

In the event that this Court finds that Plaintiff has failed to sufficiently plead any of her causes of action against Defendant, Plaintiff requests leave of the Court to amend her Complaint accordingly.

Federal Rule of Civil Procedure 15(a) "dictates that leave to amend 'shall be freely given when justice so requires.'" *Bankers Ins. Co. v. LG Elecs. USA, Inc.*, 8:13-CV-40-T-23TGW, 2014 WL 325665, at *1 (M.D. Fla. Jan. 29, 2014). It follows that if additions to a complaint could clarify or more appropriately state a claim, "a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Id.* (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). The district court has discretion to grant or deny a party's request to amend, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). So if necessary, Plaintiff respectfully requests that the Court grant her leave to amend her Complaint to cure any defects therein.

## IV.
### CONCLUSION

In sum, Plaintiff has pled sufficient facts to allow her to pursue and develop her claims, including claims for punitive damages, through the legal process. For these reasons, Plaintiff respectfully requests this Court deny Defendant's motions. Plaintiff further requests all further relief to which she may be justly entitled under the law.

Date: June 4, 2018                              Respectfully submitted,

By: */s/ Thomas  Graham*
**Thomas Scolaro** (FBN 178276)
Email: scolaro@leesfield.com
**Thomas D. Graham** (FBN 89043)
Email: graham@leesfield.com
LEESFIELD SCOLARO, P.A.
2350 South Dixie Highway
Miami, Florida 33133
Telephone: 305-854-4900
Facsimile:  305-854-8266

-and-

ARNOLD & ITKIN LLP
Kurt B. Arnold (TBN: 24036150)
karnold@arnolditkin.com
J. Kyle Findley (TBN: 24076382)
kfindley@arnolditkin.com
Kala F. Sellers (TBN: 24087519)
ksellers@arnolditkin.com
Adam Lewis (TBN: 24094099)
alewis@arnolditkin.com
6009 Memorial Drive
Houston, Texas 77007
Tel: (713) 222-3800
Fax: (713) 222-3850

*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF on June 4, 2018, which will provide a copy of the foregoing document to all counsel of record by CM/ECF and/or another means in accordance with the Federal Rules of Procedure.

*/s/ Thomas D. Graham*
Thomas D. Graham

## <u>SERVICE LIST</u>

CASE NO.: 18-CV-20829-KMW

FOREMAN FRIEDMAN, P.A.
Jeffrey E. Foreman, Esq.
Florida Bar No. 0240310
jforeman@fflegal.com
Noah D. Silverman, Esq.
Florida Bar No. 401277
nsilverman@fflegal.com
Ligianette Cordova, Esq.
Florida Bar No. 103271
lcordova@fflegal.com
One Biscayne Tower, Suite 2300
2 South Biscayne Boulevard
Miami, FL 33131
Phone: (305) 358-6555
Fax: (305) 374-9077
***Attorneys for Defendant***